## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
                                          :
KTV MEDIA INTERNATIONAL, INC.,            :
                                          :
        Plaintiff,                        :
                                          :
        v.                                :       **Before:  Judith M. Barzilay, Senior Judge***
                                          :       **No. 10-CV-03973**
GALAXY GROUP, LA LLC,                     :
                                          :
        Defendant.                        :
                                          :
-------------------------------------------------------x
```

### OPINION & ORDER

BARZILAY, Senior Judge:  Plaintiff KTV Media International, Inc. ("Plaintiff" or "KTV

Media International"), a web developer incorporated in the State of New York, filed this action

for breach and anticipatory breach of contract against Defendant Galaxy Group, LA LLC

("Defendant" or "Galaxy").  The parties, through alleged predecessors-in-interest, originally

contracted that KTV Media International would construct an online, user-friendly system for the

sale of lottery tickets, though Galaxy subsequently terminated this agreement. *See generally* Am.

Compl.  Galaxy brings the instant motion to dismiss based on a forum selection clause contained

in a particular operating agreement, which, it argues, mandates that a state or federal court in

California hear these claims. Def.'s Mot. to Dismiss 1-2.  Alternatively, Defendant requests that

the court transfer this case to the District Court for the Central District of California. Def.'s Mot.

to Dismiss 17.  The principal question before the court asks whether the broad language of the

forum selection clause encompasses Plaintiff's claims.  For the reasons below, the court finds

---

* The Honorable Judith M. Barzilay, Senior Judge, United States Court of International
Trade, sitting by designation.

that it does and therefore grants Defendant's motion to dismiss without prejudice and denies its

motion to transfer.

## I. Background[1]

The instant dispute emerges out of a host of agreements executed by the parties or their

alleged predecessors-in-interest between 2008 and 2010.  In July 2008, Danger Dust LLC

("Danger Dust"), alleged predecessor-in-interest to Plaintiff, entered into the first of these

agreements with LottoGopher LLC ("LottoGopher"), a California-based media company and

predecessor-in-interest to Defendant, *see generally* Taddeo Decl. Ex. 1, to develop a website that

would allow users to purchase lottery tickets, pool these tickets into groups, and track their

winnings (the "Website"), Am. Compl. ¶ 10; Def.'s Mot. to Dismiss 1.  In return for timely

development of the Website, the parties agreed that Danger Dust would receive a five percent

equity interest in LottoGopher.  Am. Compl. ¶¶ 9, 12.  Defendant's submissions unquestionably

demonstrate, and Plaintiff does not dispute, that the parties incorporated this agreement into the

First Amendment to LottoGopher's principal operating agreement on July 28, 2008

("LottoGopher Operating Agreement").  Meyers Decl. Ex. I at 1.

Third-party designers hired by LottoGopher and other factors beyond Danger Dust's

control purportedly prevented timely completion of the Website.  Am. Compl. ¶ 13-14.

Nevertheless, the parties agreed that Danger Dust would continue its work on the website despite

the missed deadline and, in later amendments to the LottoGopher Operating Agreement, altered

---

[1] Unless otherwise noted, the parties do not dispute the relevant facts.

the equity interest consideration.  Am. Compl. ¶¶ 13-14; Meyers Decl. Ex. J (amended equity

interest in Second, Third, and Seventh Amendments to LottoGopher Operating Agreement).

By the end of 2009, neither Danger Dust nor LottoGopher remained parties to the

Website development agreement.  In July of that year, Danger Dust assigned its interest in the

agreement to KTV Media, Inc. ("KTV Media"), Am. Compl. ¶ 15, and that fall KTV Media and

LottoGopher executed new terms and benchmarks for development of the Website (the "2009

Terms and Benchmarks").  The 2009 Terms and Benchmarks set an updated timetable for

development of the site and provided that LottoGopher would make payments of $17,000 to

KTV Media and $60,000 to a KTV Media principal and would "reinstate [the five percent]

equity [due] to Danger Dust upon full and satisfactory completion of the benchmarks . . . ."[2]

Taddeo Decl. Ex. 4.  Allegedly unavoidable difficulties again led to delays in completing the

Website, and while it made the $17,000 payment to KTV Media, LottoGopher withheld the

larger payment to the KTV Media principal.  Am. Compl. ¶ 17.  Ultimately, on December 31,

---

[2] Contrary to Plaintiff's strange assertion in its briefing, the 2009 Terms and Benchmarks clearly references the First Amendment to the LottoGopher Operating Agreement, in which LottoGopher made the initial promise of a five percent equity interest. *Compare* Pl.'s Opp'n 7 ("Critically, the 2009 [Terms and Benchmarks] Agreement does not reference the 2008 Lotto [Operating Agreement] in any manner or hold out the carrot of [LottoGopher] membership upon delivery of the website." (emphasis in original)), *with* Am. Compl. ¶ 16 ("On or about October [ ] 2009, [LottoGopher] and KTV Media entered into a new agreement for the completion of the Lottery Website . . . . Under [this Agreement], . . . [LottoGopher] agreed to pay KTV Media $17,000.00 and a KTV Media principal $60,000.00, and grant a five (5%) ownership interest in [LottoGopher] to KTV Media."), *and* Taddeo Decl. Ex. 4 (2009 Terms and Benchmarks referencing July 28, 2008 First Amendment to LottoGopher Operating Agreement and specifically noting provision of equity interest in exchange for completion of website).

2009, LottoGopher executed a final dissolution agreement,[3] the terms of which required the

company to sell and assign its interest in the Website to Galaxy. Meyers Decl. Ex. L at 3.

To govern membership interests in and maintenance of the company, members of Galaxy

executed an LLC operating agreement on January 16, 2010 (the "Galaxy Operating Agreement").

*See generally* Taddeo Decl. Ex. 5. Among other parties, KTV Media signed the agreement, and

Exhibit A of the Galaxy Operating Agreement lists Danger Dust as a member with a five percent

"Member's Percentage Interest" and a "Member's Capital Contribution" of "LottoGopher, LLC

Membership, Services."[4] Taddeo Decl. Ex. 5 at 16, 17. The signature on behalf of KTV Media

appears identical to that found in other agreements signed by Danger Dust or KTV Media. *See,*

*e.g.,* Taddeo Decl. Exs. 4, 5 at 16; Meyers Decl. Exs. H, I at 3, L at 6. The parties do not dispute

that this agreement governs all membership interest in Galaxy, *see generally* Taddeo Decl. Ex. 5,

and supersedes all prior contracts between the LLC members as to the same subject matter.

Taddeo Decl. Ex. 5 at 13. Importantly, Paragraph 10.11 of the Galaxy Operating Agreement

provides:

> Each Member hereby consents to the exclusive jurisdiction of the state and federal courts
> sitting in California in any action on a claim arising out of, under or in connection with
> this Agreement or the transactions contemplated by this Agreement. Each Member
> further agrees that personal jurisdiction over him or her may be effected by service of
> process by registered or certified mail . . . , and that when so made shall be as if served
> upon him or her personally within the State of California.

---

[3] Although Plaintiff alleges that LottoGopher dissolved on January 26, 2010, Am.
Compl. ¶ 18, this issue of fact does not prove relevant to the court's ultimate analysis.

[4] Danger Dust was originally named on the signature page, but appears to have been
crossed out and replaced with KTV Media, with the initials "JK" next to this handwritten
amendment. Taddeo Decl. Ex. 5 at 16.

Taddeo Decl. Ex. 5 at 14.  The language of this forum selection clause mirrors text on the same

topic found in the LottoGopher Operating Agreement.  Meyers Decl. Ex. J at 18.

KTV Media and LottoGopher subsequently assigned the 2009 Terms and Benchmarks to

Galaxy on February 2, 2010 (the "February 2010 Assignment Agreement").  *See* Taddeo Decl.

Ex. 6.  In so doing, the parties represented that all terms in the 2009 agreement would remain in

full force and effect with the exception of the "change from LottoGopher LLC to Galaxy Group

LA, LLC in all instances" and that the $60,000 payment would now go to a different KTV Media

principal, Josh Kimberg ("Kimberg").  Taddeo Decl. Ex. 6.  Notably, Kimberg also serves as

principal of Danger Dust, Compl. ¶ 11 (Plaintiff's original complaint describing Danger Dust as

a "Josh Kimberg limited liability company"), and concurrently as registered agent for Plaintiff,

Taddeo Dec. Ex. 3.

According to Plaintiff, KTV Media assigned the 2009 Terms and Benchmarks and the

February 2010 Assignment Agreement to KTV Media International "on or about February 2010,"

with Defendant's full knowledge and consent.  Am. Compl. ¶ 19; Meyers Decl. Ex. C (email

from Plaintiff's counsel to Galaxy's counsel representing that assignment comprised "February 2,

2010 writing and an amendment thereafter").[5]  Defendant disputes Plaintiff's assertion that it

---

[5] Plaintiff has submitted no documentary evidence of this purported assignment, nor does it state what other agreements or interests, if any, KTV Media assigned to KTV Media International.  Plaintiff's clearest expression on this point lies in its opposition brief: "As indicated in the [First Amended Complaint] (Paragraph 19), an assignment was made by KTV Media to [KTV Media International] 'on or about February 2010', and the issue arises as to what exactly was assigned.  Pre-answer, with no discovery as yet undertaken, with as yet no review of the no doubt extensive email traffic between the Plaintiff and Defendant Groups, the response must be: the 2009 [Terms and Benchmarks] and Feb. 2010 [Assignment] Agreements, as they may have been later amended orally and in email communications . . . ."  Pl.'s Opp'n 9.

consented to any assignment of interest from KTV Media to KTV Media International.  Def.'s

Mot. to Dismiss 3 n.2, 6.

    In the spring of 2010, the relationship between the parties broke down.[6]  Plaintiff alleges

that it "delivered a fully functioning website" to Galaxy on April 11, 2010, and thereafter sent

Galaxy certain data from the Website that Galaxy could refer to a third party auditor.  Am.

Compl. ¶ 22.  On May 2, 2010, James Morel, Managing Member of Galaxy emailed Kimberg

stating that the auditor found that the Website did not function and that Galaxy could use "little,

if any, of the work done by KTV Media."  Taddeo Decl. Ex. 8.  Morel requested that Kimberg

return the $17,000 LottoGopher had paid to KTV Media in 2009 and stated that the company

would amend the Galaxy Operating Agreement "to clarify that KTV Media is not a 5% member

of the company."  Taddeo Decl. Ex. 8.  Counsel for Galaxy reiterated this message in a letter to

Kimberg on May 4, 2010, stating that Galaxy had suffered damages as a result of KTV Media's

delays and threatening suit if the parties could not resolve the matter within ten days.  Taddeo

Decl. Ex. 7 at 1-2.  Plaintiff's suit followed.

## II. Subject Matter Jurisdiction & Standard of Review

    This court has subject matter jurisdiction over the case pursuant to 28 U.S.C.

§ 1332(a)(1).[7]  Defendant moves to dismiss Plaintiff's action based on improper venue pursuant

---

    [6] Defendant suggests in its pleadings that the relationship worsened slightly earlier.
Def.'s Mot. to Dismiss 11 (arguing that KTV Media, incorporated on March 1, 2010, formed
after relationship between parties broke down); Def.'s Reply 6 (same).

    [7] Defendant makes a stray reference to seeking dismissal under Federal Rule of Civil
Procedure 12(b)(1) for lack of subject matter jurisdiction.  Def.'s Mot. to Dismiss 11.  While
some courts have allowed movants to seek dismissal on subject matter jurisdiction grounds in
these circumstances, *see, e.g., AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 152-55

to Federal Rule of Civil Procedure 12(b)(3),[8] and the court may review materials outside the

pleadings in deciding whether to grant Defendant's motion. *Jockey Int'l, Inc. v. M/V Leverkusen

Express*, 217 F. Supp. 2d 447, 450-51 (S.D.N.Y. 2002). At this stage, Plaintiff bears the burden

of making a prima facie showing that venue is proper, and the court views "all the facts in a light

most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). "If

the [parties'] submissions reveal any material issues of fact, . . . so long as the plaintiff has made

---

(2d Cir. 1984), others have noted that such a ruling erroneously implies that the court does not
have subject matter jurisdiction over the suit, *see New Moon Shipping Co. v. MAN B & W Diesel
AG*, 121 F.3d 24, 28 (2d Cir. 1997). Because the court dismisses on the basis of improper venue
under Rule 12(b)(3), it need not address this issue.

[8] Defendant alternatively seeks dismissal under Rule 12(b)(6) for failure to state a claim.
As yet, "no consensus [has] developed as to the proper procedural mechanism to request
dismissal of a suit based upon a valid forum selection clause." *New Moon Shipping Co.*, 121
F.3d at 28; *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 371 (S.D.N.Y. 2010)
("[N]either the Supreme Court nor the Second Circuit Court of Appeals has 'specifically
designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal
of a suit based upon a valid forum selection clause.'" (citation omitted)). "The difficulty with
this question arises from the fact that a forum selection clause cannot oust a federal court of
personal or subject matter jurisdiction or render venue improper." *Lurie v. Norwegian Cruise
Lines, Ltd.*, 305 F. Supp. 2d 352, 356 (S.D.N.Y. 2004). The Second Circuit, however, has
endorsed both Rule 12(b)(3) and 12(b)(6) as proper means of seeking dismissal based on forum
selection clauses, *see Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (12(b)(3)
proper grounds to seek dismissal); *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland
N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998) (12(b)(6) proper grounds to seek dismissal), with the
major practical difference between the two being "that the former rule allows courts to consider
materials outside the pleadings, while the latter does not." *Jockey Int'l, Inc. v. M/V Leverkusen
Express*, 217 F. Supp. 2d 447, 450 (S.D.N.Y. 2002); *see also Friedl v. City of New York*, 210
F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits
submitted by defendants . . . or relies on factual allegations contained in legal briefs or
memoranda . . . in ruling on a 12(b)(6) motion to dismiss." (internal citations, quotation marks, &
brackets omitted)). Because plaintiff has not objected to the use of either procedural mechanism,
and both parties have submitted and rely upon materials outside the pleadings, the court treats
this motion as one for dismissal under Rule 12(b)(3). *See Cuno, Inc. v. Hayward Indus. Prods.,
Inc.*, No. 03-CV-3076, 2005 WL 1123877, at *1 n.1 (S.D.N.Y. 2005) (analyzing motion to
dismiss under Rule 12(b)(3) standard where plaintiffs submitted materials outside pleadings).

a *prima facie* showing of the propriety of proceeding with the action, the court [will] resolve any

factual disputes following an evidentiary hearing at which the plaintiff is afforded an adequate

opportunity to be heard." *Uniwire Trading LLC v. M/V Wladyslaw Orkan*, 622 F. Supp. 2d 15,

18 (S.D.N.Y. 2008); *accord New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29

(2d Cir. 1997).  In the absence of any disputed facts, the court must decide the remaining issues

of law. *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822-23 (2d Cir. 2006).

### III. Discussion

### A. The Forum Selection Clause in the Galaxy Operating Agreement Applies to Plaintiff's Claims

Determining the scope of a forum selection clause is a matter of contractual

interpretation, *see Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009); *Phillips*, 494 F.3d at

387 (forum selection clause is "a creature of contract"), and "[t]he Second Circuit has endorsed

an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring

their use." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09-CV-7268, 2009 WL

4907060, at *3 (S.D.N.Y. 2009) (citation omitted).  The Second Circuit has formulated a four-

part test to determine when a forum selection clause warrants dismissal.[9]  The court must

---

[9] The Second Circuit also has raised the question of what law should govern
interpretation of a forum selection clause where, as here, the contract containing the clause also
contains a choice-of-law provision. *See Phillips*, 494 F.3d at 384-86.  While "[t]here is no doubt
that the first and fourth steps of the [four-pronged test to determine the enforceability of a forum
selection clause] . . . are procedural in nature and are to be analyzed under federal law," *Bluefire
Wireless, Inc.*, 2009 WL 4907060 at *2, the Second Circuit has stated that it could not
"understand why the interpretation of a forum selection clause [for prongs two and three] should
be singled out for application of any law other than that chosen to govern the interpretation of the
contract as a whole." *Phillips*, 494 F.3d at 386.  Where parties have not cited to the law provided
in the choice-of-law clause, however, the court may reasonably conclude that they have
consented to the application of federal law to interpret the forum selection clause. *See, e.g., id.*

determine (1) "whether the clause was reasonably communicated to the party resisting

enforcement"; (2) whether the clause is "mandatory or permissive, i.e., . . . whether the parties

are *required* to bring any dispute to the designated forum or simply permitted to do so"; and (3)

"whether the claims and parties involved in the suit are subject to the forum selection clause."

*Phillips*, 494 F.3d at 383 (emphasis in original); *accord S.K.I. Beer Corp. v. Baltika Brewery*,

612 F.3d 705, 708 (2d Cir. 2010) (citation omitted). If the clause satisfies the first three

elements, it is "presumptively enforceable," and, under the fourth step, the party resisting

enforcement then bears the burden of rebutting this presumption by making "a sufficiently strong

showing" that "enforcement would be unreasonable or unjust, or that the clause was invalid for

reasons such as fraud or overreaching." *Phillips*, 494 F.3d at 383-84 (quoting *M/S Bremen v.

Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). The court examines these four prongs in turn.

---

(district court's application of federal law proper as neither party objected to its use); *Exp.-Imp.
Bank v. Hi-Films S.A. de C.V.*, No. 09-CV-3573, 2010 WL 3743826, at \*5 n.2 (S.D.N.Y. 2010);
*Bluefire Wireless, Inc.*, 2009 WL 4907060 at \*2 (where neither party briefed law specified in
choice-of-law provision, nor provided declaration from local law expert, proper to apply federal
law); *Cfirstclass Corp. v. Silverjet, PLC*, 560 F. Supp. 2d 324, 328 n.2 (S.D.N.Y. 2008)
("[W]here, as here, the parties do not invoke [the law provided in the choice-of-law clause] in
their briefs, courts may apply 'general contract law principles and federal precedent to discern the
meaning and scope of the forum selection clause.'" (quoting *Phillips*, 484 F.3d at 386)).
Paragraph 10.10 of the Galaxy Operating Agreement provides that the "Agreement shall, in all
respects, be governed by the laws of the State of California applicable to agreements executed
and to be wholly performed within the State of California." Taddeo Decl. Ex. 5 at 14. While
Defendant cites decisions from federal courts sitting in California, *see* Def.'s Mot. to Dismiss 15-
16, the parties have not relied on California state law to interpret the clause but rather themselves
rely on federal precedent, *see generally* Def.'s Mot. to Dismiss; Pl.'s Opp'n; Def.'s Reply Br.
The court therefore will apply federal law to interpret the forum selection clause in the Galaxy
Operating Agreement.

### 1.    The Clause Was Reasonably Communicated to KTV Media International

First, the court finds the forum selection clause was "reasonably communicated" to

Plaintiff. As noted, Kimberg – registered agent for KTV Media International – has signed many,

if not all, of the agreements executed between the parties on behalf of Danger Dust and later

KTV Media, including the Galaxy Operating Agreement. *See* Taddeo Decl. Ex. 4 (2009 Terms

and Benchmarks, with Kimberg signing on behalf of KTV Media / Danger Dust); Taddeo Decl.

Ex. 6 (February 2010 Assignment Agreement, with Kimberg signing on behalf of KTV Media);

Meyers Decl. Ex. H (intellectual property agreement between KTV Media and Galaxy regarding

Website, with Kimberg signing on behalf of KTV Media); *cf.* Taddeo Decl. Ex. 5 at 16 (Galaxy

Operating Agreement, with same signature as appearing on documents signed by Kimberg and

with initials "JK" next to change from Danger Dust to KTV Media); Meyers Decl. Ex. I at 3

(First Amendment to LottoGopher Operating Agreement, with same signature as appearing on

documents signed by Kimberg); Meyers Decl. Ex. L at 6 (Final Dissolution Agreement for

LottoGopher, with same signature as appearing on documents signed by Kimberg). Additionally,

KTV Media International claims successor-in-interest status under at least two agreements that

provide equity in Galaxy, a matter governed by the Galaxy Operating Agreement. Indeed,

Plaintiff does not contend that it was unaware of either the Galaxy Operating Agreement or the

forum selection clause contained therein when it allegedly acquired those interests. These facts

demonstrate that the forum selection clause was "reasonably communicated" to Plaintiff.

Regardless, as discussed below, even "[i]n the absence of direct communication of a forum-

selection clause to a non-signatory, the non-signatory may be nevertheless bound by the clause"

if, as in this case, the non-signatory is "closely related" to a signatory to the contract containing

the forum selection clause. *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, No.

5:01-CV-0882, 2007 WL 2891981, at *8 (N.D.N.Y. 2007) (citation omitted).

### 2.     The Forum Selection Clause is Mandatory

With respect to the second prong, the court turns to the language of the forum selection

clause to determine if it is mandatory as opposed to permissive. *S.K.I. Brewery Corp.*, 612 F.3d

at 708 (citing *Phillips*, 494 F.3d at 386). As noted, the clause provides that each member in

Galaxy "consents to the exclusive jurisdiction of the state and federal courts sitting in

California." Taddeo Decl. Ex. 5 at 14. Defendant correctly identifies the patently mandatory

nature of the clause, *see S.K.I. Brewery Corp.*, 612 F.3d at 708 ("A forum selection clause is

viewed as mandatory when it confers exclusive jurisdiction on the designated forum or

incorporates obligatory venue language." (quoting *Phillips*, 494 F.3d at 386)); *Brennen v. Phyto-

Riker Pharms., Ltd.*, No. 01-CV-11815, 2002 WL 1349742, at *3 (S.D.N.Y. 2002) (noting that

"inclusion of the phrase 'exclusive jurisdiction' indicates an intent that any dispute . . . be filed in

one of the fora specified"), and Plaintiff does not dispute this categorization.

### 3.     The Claims and Parties in the Suit are Subject to the Clause

On the issue of whether the parties and Plaintiff's claims fall within the scope of the

clause, the court answers affirmatively. Defendant argues that Plaintiff cannot seek recovery for

development of the Website – including equity ownership in Galaxy – while simultaneously

denying the enforceability of the Galaxy Operating Agreement. *See generally* Def.'s Mot. to

Dismiss; Def.'s Reply. Defendant also avers that the merger clause of the Galaxy Operating

Agreement renders that agreement the sole surviving contract between the parties. Def.'s Mot. to

Dismiss 2, 4-5; Def.'s Reply 1-3. Plaintiff responds that it never signed the operating agreement,

that the operating agreement does not govern the parties' dispute concerning development of the

Website, and that, in any case, the agreement's ambiguous terms render it unenforceable. Pl.'s

Opp'n 2, 4-9. The court finds Plaintiff's arguments unpersuasive.

Turning first to the relevant text, the broad language of Paragraph 10.11 of the Galaxy

Operating Agreement extends the reach of the clause to any action "arising out of, under or in

connection with this Agreement or the transactions contemplated by this Agreement." Taddeo

Decl. Ex. 5 at 14. Where broadly worded, a "forum selection clause is not limited solely to

claims for breach of the contract that contains it." *Cfirstclass Corp. v. Silverjet PLC*, 560 F.

Supp. 2d 324, 329 (S.D.N.Y. 2008) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d

Cir. 1993)). In determining whether the clause extends to Plaintiff's claims, this court

"examine[s] the substance of those claims, shorn of their labels." *Phillips*, 494 F.3d at 388

(citation omitted). While Plaintiff's claims arguably may not "aris[e] out of" the Galaxy

Operating Agreement,[10] they clearly "aris[e] . . . in connection with [the] Agreement" or "aris[e]

out of, under or in connection with . . . the transactions contemplated by [the] Agreement."

Taddeo Decl. Ex. 5 at 14. Plaintiff's case relies, in no small part, on the accusation that

Defendant wrongfully withheld Plaintiff's rightful equity interest in Galaxy, Am. Compl. ¶ 23;

---

[10] The Second Circuit has interpreted the phrase "arise out of" more narrowly to refer only to claims "originating from" the contract. *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (citation omitted); *see also Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580, 2008 WL 4833001, at *7 (S.D.N.Y. 2008) (phrase "arising out of" narrower than "in connection with").

Pl.'s Opp'n 9, a matter squarely governed by the Galaxy Operating Agreement, Taddeo Decl. Ex.

5 at 1-2 (terms for capital contributions of Galaxy members), 2 (admission of and payments to

members), 5-10 (transfer and assignment of interest in Galaxy), and 14 (non-competition clause).

Furthermore, the Galaxy Operating Agreement clearly describes Danger Dust's capital

contribution as including "Services," Taddeo Decl. Ex. 5 at 17, and Plaintiff has offered no

evidence that this term refers to anything but development of the Website, the sole axis of the

parties' interaction. Without such a transaction, Plaintiff could not present a claim for breach or

anticipatory breach of contract due to Galaxy's request for return of the $17,000 payment made

to KTV Media and Galaxy's expressed intention to amend the Galaxy Operating Agreement so

as to remove KTV Media as a member. *See NY Metro Radio Korea, Inc. v. Korea Radio USA,*

*Inc.*, No. 07-CV-4123, 2008 WL 189871, at *4 (E.D.N.Y. 2008) ("Plaintiff . . . filed this claim in

response to defendant's cease and desist letter, in which defendant asserted its rights . . . under

the [agreement containing the forum selection clause]. Because the Court's determination of the

rights and duties of the parties will depend on the interpretation of [that agreement], plaintiff's

lawsuit constitutes a dispute regarding that contract.").

Plaintiff fails to persuade the court that the clause does not cover the subject parties and

claims. As an initial matter, the fact that the Galaxy Operating Agreement does not list KTV

Media International as a signatory "is insufficient, standing alone, to preclude enforcement of

[the] forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d

Cir. 2009). A movant seeking dismissal may enforce a forum selection clause against a non-

signatory where the non-signatory is "closely related" to one of the signatories to the contract

containing the subject clause such that "enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *MGM Studios Inc. v. Canal+ Distrib. S.A.S.*, No. 07-CV-2918, 2010 WL 537583, at *5 (S.D.N.Y. 2010) (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99-CV-10550, 2000 WL 1277597, at *3 (S.D.N.Y. 2000)). Previous courts have repeatedly found non-signatories "closely related" to signatories where their "interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Weingrad v. Telephathy, Inc.*, No. 05-CV-2024, 2005 WL 2990645, at *5 (S.D.N.Y. 2005) (citing *Lipcom v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)). While successors-in-interest unquestionably fit within the definition of "closely related," *see MGM Studios Inc.*, 2010 WL 537583 at *5 (citation omitted); *Aguas Lenders Recovery Grp. LLC*, 585 F.3d at 701 (successors-in-interest subject to presumption of enforceability of mandatory forum selection clause), "[i]t is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Atlasjet Uluslararasi Havacilik A.S. v. EADS Aeroframe Servs., LLC*, No. 07-CV-212, 2009 WL 436420, at *4 (S.D.N.Y. 2009) (quoting *Weingrad*, 2005 WL 2990645 at *4)); *see also Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) (corporate president who signed contract on behalf of company subject as individual to forum selection clause); *MGM Studios Inc.*, 2010 WL 537583 at *5 (corporate parents allegedly owning majority shares, with direct or indirect controlling interest in signatory, "closely related"); *Bluefire Wireless, Inc.*, 2009 WL 4907060 at *2 n.4 (non-signatory defendants "closely related" where plaintiff "base[d] their

alleged liability exclusively on conduct of [signatory]"); *Weingrad*, 2005 WL 2990645 at *5-6

(non-signatories who allegedly acted in concert with signatory "closely related").

     The record establishes that KTV Media International is "closely related" to KTV Media.

Plaintiff's claims for breach and anticipatory breach completely derive from and directly relate to

KTV Media's conduct developing the Website. *See* Am. Compl. ¶¶ 19, 21-22; *see also id.* ¶ 25

("Plaintiff, individually and through its predecessors-in-interest [Danger Dust] and KTV Media

. . . , performed all of the [web development] Services required . . . ."). Additionally, Plaintiff's

assertion of Defendant's wrongdoing rests, in good part, on Galaxy's refusal to honor the

promise of equity interest, a matter governed solely by the Galaxy Operating Agreement. *See*

Am. Compl. ¶ 23; Pl.'s Opp'n 9. In other words, Plaintiff's claims and the relief it seeks directly

relate to KTV Media's status as a signatory to the operating agreement. Moreover, Plaintiff goes

so far as to refer to itself, KTV Media, and Danger Dust jointly as "the Plaintiff Group," Pl.'s

Opp'n 2-3, and the court previously has found such statements indicative of a closely related

status, *cf. Bluefire Wireless, Inc.*, 2009 WL 4907060 at *2 n.4 (non-signatories closely related

where Plaintiff "refers to all Defendants in the singular . . . and bases their alleged liability

exclusively on the conduct of [signatory]").

     The court finds similarly unavailing Plaintiff's suggestion that the forum selection clause

does not apply to its claims because the Galaxy Operating Agreement does not govern the

Website's development. While leaving the court in the dark as to whether KTV Media ever

assigned the Galaxy Operating Agreement to KTV Media International, Plaintiff argues that this

dispute arises out of the "independent understanding" the parties promulgated in the 2009 Terms

and Benchmarks and February 2010 Assignment Agreement, and that the Galaxy Operating

Agreement "has been superseded by the combination of the[se] two computer contracts." Pl.'s

Opp'n 9; *see id.* 7 ("[The] [2009 Terms and Benchmarks] does what the Galaxy [Operating

Agreement] does not. A computer contract, it provides the terms of the [W]ebsite development

and production work and forms of consideration expected . . . ."). The court views Plaintiff's

efforts as a mere attempt to "plead around the [Operating] Agreement's forum selection clause,"

*Russbeer Int'l LLC v. OAO Baltika Brewing Co.*, No. 07-CV-1212, 2008 WL 905044, at \*5

(E.D.N.Y. 2008) (forum selection clause enforceable where resisting party argued claim arises

under separate contract, but gravamen of claim arose under agreement containing clause), as

Plaintiff has offered no evidence that these two documents have in any sense superseded the

Galaxy Operating Agreement. The court will not allow a "forum selection clause [to] be

defeated by artful pleading of claims not based on the contract containing the clause if those

claims grow out of the contractual relationship, or if the gist of those claims is a breach of that

relationship." *Weingrad*, 2005 WL 2990645 at \*4 (quoting *Anselmo v. Univision Station Grp.,

Inc.*, No. 92-CV-1471, 1993 WL 17173, at \*2 (S.D.N.Y. 1993) (internal quotation marks

omitted)).

### 4.     **Plaintiff Does Not Rebut the Presumption of Enforceability**

Once the court deems a forum selection clause presumptively enforceable, a party seeking

to avoid enforcement bears a "heavy burden" of rebutting this presumption. *E.g., Bluefire

Wireless, Inc.*, 2009 WL 4907060 at \*2. Plaintiff may avoid enforcement by demonstrating that

"(1) . . . incorporation [of the clause] was the result of fraud or overreaching; (2) the law to be

applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong

public policy of the forum state; or (4) trial in the selected forum will be so difficult and

inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips*, 494 F.3d

at 392 (citing *Roby*, 996 F.2d at 1363). "The Supreme Court has construed this exception

narrowly," *Tropp v. Corp. of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010) (citation omitted), and

Plaintiff has failed to meet this demanding burden. If any negative impact would come to

Plaintiff should it be required to bring this suit in California, Plaintiff has not alleged it, nor has

Plaintiff alleged that Defendant has engaged in anything resembling fraud or overreaching.

Therefore, the forum selection clause applies to this action.

Further seeking to avoid application of the forum selection clause, Plaintiff points to

several examples of purported ambiguity in the Galaxy Operating Agreement, the most relevant

of which is that Exhibit A to the agreement lists Danger Dust, as opposed to KTV Media, as a

member, and that the agreement fails to clearly define Plaintiff's capital contribution of

"Services." Pl.'s Opp'n 5-6. Plaintiff concludes that "[a]dditional documentary and parole

evidence is obviously necessary to resolve these ambiguities . . . before the forum selection

clause can possibly be enforced." Pl.'s Opp'n 6. This argument must fail. As Defendant notes,

the Galaxy Operating Agreement contains a severability clause providing that "[i]f any provision

of this Agreement or the application of such provision to any person or circumstance shall be

held invalid, the remainder of this Agreement or the application of such provision to persons or

circumstances other than those to which it is held invalid shall not be affected thereby." Taddeo

Decl. Ex. 5 at 13. Assuming that Plaintiff could show irreconcilable ambiguity in the document,[11] this would not affect the enforceability of the forum selection clause.

Finally, as noted above, Defendant devotes much of its motion to the argument that the merger clause contained in the Galaxy Operating Agreement integrates all other agreements between the parties, including the 2009 Terms and Benchmarks and the February 2010 Assignment Agreement, and therefore "is the only [agreement] which now governs." Def.'s Mot to Dismiss 4. Paragraph 10.1 of the Galaxy Operating Agreement provides that it and Galaxy's Articles of Incorporation "constitute the complete and exclusive statement of agreement among the Members with respect to the subject matter herein and therein and replace and supersede all prior written and oral agreements among the Members." Taddeo Decl. Ex. 5 at 13. The court declines to read this clause as extending to the website development contracts, particularly as the parties executed the latter after the Galaxy Operating Agreement came into effect and the February 2010 Assignment Agreement provides that the 2009 Terms and Benchmarks "is in full force and effect." Taddeo Dec. Ex. 6. Regardless, the broad language of the forum selection clause covers Plaintiff's claims even if the merger clause does not integrate all agreements, and therefore the court need not reach the question of the scope of the merger clause.

---

[11] Plaintiff also argues that the Galaxy Operating Agreement does not apply because of Defendant's position that KTV Media never satisfied the condition precedent for its membership interest in Galaxy, namely the successful development of a functioning website. Pl.'s Opp'n 7. This argument conflates the substance of Plaintiff's claims for breach and the issue of where those claims should be heard. Indeed, the merits of this action depend upon Plaintiff establishing that it, together with KTV Media, met this condition for membership, and is therefore owed payment as a result. The court therefore believes the issue of whether equity interest vested is intimately tied to the merits of this case, and therefore leaves this issue to be decided by the courts designated in the forum selection clause.

### B. Plaintiff's Claim of Rescission Does Not Bar Application of the Forum Selection Clause

Plaintiff briefly concludes that even if the court deems the Galaxy Operating Agreement

enforceable, Defendant rescinded the contract by "withdrawing its pledge of an equity interest to

Plaintiff upon the latter's final delivery of a final website," as expressed in an email and

subsequent letter to Plaintiff. Pl.'s Opp'n 10 (citing Taddeo Decl. Exs. 7, 8). As such, Plaintiff

argues that "Defendant cannot now enforce the Agreement's forum selection clause." Pl.'s

Opp'n 10. Rescission amounts to the "unilateral unmaking of a contract for a legally sufficient

reason [and] . . . . is generally available as a remedy or defense for a non-defaulting party and is

accompanied by restitution of any partial performance, thus restoring the parties to their

precontractual positions." *Black's Law Dictionary* 1420-21 (9th ed. 2009). The court does not

agree with Plaintiff's characterization that Defendant's email and letter acted to rescind the

Galaxy Operating Agreement. With the substance of Plaintiff's claims so directly tied to its

purported right to equity interest in Galaxy, it hardly makes sense for Plaintiff to claim Defendant

has rescinded the contract such that it is no longer in force. *See Schibuk v. Poinciana-Regency

Ltd. P'ship*, 764 F. Supp. 878, 882 (S.D.N.Y. 1991) (rescission cannot be accomplished by

unilateral demand in case of fully executed agreement); *In re Air Crash Disaster at Warsaw,

Poland, on March 14, 1980*, 535 F. Supp. 833, 839 (E.D.N.Y. 1982) (noting "well settled

principles of contract law provid[ing] that rescission can be obtained only by the non-breaching

party"). The Galaxy Operating Agreement remains in effect and its forum selection clause binds

the parties.

## C. Dismissing Plaintiff's Claims is Appropriate in Light of the Forum Selection Clause

It is "within the sound discretion of the district court" whether to grant dismissal or order transfer of the case to another district in which it could have been brought. *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Courts in this District typically will dismiss rather than transfer a case where an applicable forum selection clause allows a plaintiff a choice of more than one permissible forum. *See, e.g.*, *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 409 (S.D.N.Y. 2001)*; Weingrad*, 2005 WL 2990645 at *6 ("Courts in this district have dismissed cases involving clauses that permit suit in both federal and state courts of a foreign jurisdiction . . . ."). The forum selection clause in the Galaxy Operating Agreement provides that members consent to "the exclusive jurisdiction of the state and federal courts sitting in California," Taddeo Decl. Ex. 5 at 14, but does not restrict prospective plaintiffs as to which. To transfer this case to the District Court for the Central District of California, as Defendant alternatively requests, would therefore "depriv[e] plaintiff of its right under the forum selection clause of this contract to bring suit in *either* state or federal court." *GMAC Commercial Credit, LLC*, 198 F.R.D. at 409 (emphasis in original).

No. 10-CV-03973                                                    Page 21

## IV. Conclusion

Therefore, upon consideration of Defendant's Motion to Dismiss or Transfer, Plaintiff's

Memorandum of Law in Opposition, the applicable legal standards and relevant facts, and all

other documents filed in this proceeding, the court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED**; and further

**ORDERS** that Defendant's motion to transfer is **DENIED**.

Dated: __July 14, 2011__
      New York, NY                              Judith M. Barzilay, Senior Judge